JOHN CASSIDY *vs.* CITY OF BANGOR.

*Way—proceedings upon laying out by municipal officers.*

In laying out or widening a way, in the exercise of the power granted by the sixth section of the city charter, the city council of Bangor need not conform to the prayer of the petition upon which such laying out or widening is made. The provision of R. S., c. 18, § 1, that the county commissioners shall comply substantially with the petition upon which they act, has no application in the case of ways laid out by municipal authority.

It is sufficient if the city council adopt measures suited to accomplish the end sought to be attained by the petitioners.

Orders passed at a meeting of the city council may be reconsidered and changed at an adjournment of the same meeting held upon a subsequent day.

A vote accepting a report made on the first day of such meeting may be reconsidered and the report recommitted with instructions at such adjourned meeting.

The city council of Bangor need not cause to be entered upon their records an adjudication that the widening of a way is of common convenience and necessity before they commit that subject to the consideration and action of the street engineers.

The fact that the notice required prior to an assessment of the damages occasioned in the laying out and altering of a way in Bangor was not given does not invalidate the action of the city council in establishing such laying out and widening; it only affects the assessment of damages.

The notice by publication of an intention to estimate the damages caused by the location and widening of a way in Bangor, according to the Act of 1835, § 1, amendatory of the city charter, relates to that subject only, and does not affect the general question of location.

The city council of Bangor is a continuing body. If an assessment made by the council of one year is void, by reason of defective notice, the city council of the following year may order a new assessment of the damages occasioned by the location or widening of a way.

ON AGREED STATEMENT OF FACTS.

This was a petition for a writ of *certiorari* to bring before this court the record of the proceedings of the city council of Bangor in widening Pickering square and Independent street in that city, setting out the facts that, on the fifth day of May, 1870, Charles Hayward and other citizens presented to the city council a petition to have Union and Fore streets and Pickering square widened

in a manner particularly specified; that on the ninth day of May, 1870, Smith & Campell and others prayed the council " to enlarge Pickering square in the direction of Union street, by making room on each side of Fore street; that the city council, on the twenty-ninth day of September, 1870, ordered the street engineers to widen Pickering square in a designated way, which it is unnecessary to particularize; different, however, from the course ultimately pursued; that on the third day of November, 1870, the street engineers made to the city council their report of their proceedings under the order of Sept. 29th, which report was then accepted, and that meeting of the city council was adjourned to the eighteenth day of November, 1870, when their former action was reconsidered and the street engineers were ordered to lay out a widening of Pickering square by including in that square all the land lying between Short, Hodsdon, and Independent streets and Pickering square, and to widen Independent street by taking into it the lots adjoining it and lying between Hodsdon and Union streets. At a meeting of the city council, holden December 28, 1870, the street engineers reported that they had laid out a widening of Pickering square and Independent street, in conformity with the instructions last given them, first having given seven days' notice of their intention, and that they would estimate the damages caused by the laying out and widening by posting two written copies of such notice in public places and causing its publication in the *Bangor Daily Whig and Courier.* The city council, at a meeting held February 2d and 4th, 1871, accepted this report, though it differed essentially from the former one, and established by vote the laying out and widening therein made. This last location passed over the land of Mr. Cassidy who considers himself thereby aggrieved, contending that the change from the former report, once accepted, was very material and wholly unauthorized; that this last, so-called, " widening " was not, in fact, a widening of Pickering square at all, because none of the territory taken bounded upon it, but was all included between Short, Hodsdon, Independent, and Fore streets, as appears from

the diagram below, the land taken by the location and widening finally established being that enclosed within the dotted lines.

The petitioner claimed that his land had not been legally taken.

1. Because said proceedings were not in pursuance of the petition therefor.

2. Because the action of the city council of November 3, 1870, upon the report of the engineers of that date, was final and the vote of the 18th of November, reconsidering said action, was void.

3. Because the city council, before committing the subject-matter to the street engineers, did not adjudge the widening prayed for in either petition, or any widening, to be "of common convenience and necessity."

4. Because notice of their intention to widen, estimate, and apportion damages was not published in two newspapers in said city, and there was no assessment of betterments.

5. Because the report of the engineers of December 28, 1870, as made and accepted and recorded, contains an erroneous and impossible description of the enlargement of Pickering square.

The provisions of the city charter of Bangor applicable to the issues presented in this case are these:

" SEC. 6. *Be it further enacted,* That the city council shall have exclusive authority and power to lay out and establish any new street or public way, or widen or otherwise alter any street or public way of said city of Bangor, and to estimate the damage any individual may sustain thereby. And in all other respects the city council shall be governed by and be subject to the same rules and restrictions as are provided by the laws of this State, regulating the laying out and repairing streets and public high-ways." . . . A right of appeal as to damages only is given, these to be determined on appeal by a jury or committee.

The amendment to the city charter by Act of 1835 provided that . . . " before such assessment [of damages and betterments] shall be made, notice shall be given to all persons interested to appear before said city council at a time and place specified, if they see cause, then and there to be heard upon the subject, which notice shall be published in two newspapers printed in said city, at least one week prior to said time of hearing."

It was provided by a city ordinance that " there shall be elected by the city council, on the fourth Monday of March, annually, a board of street engineers, to consist of three citizens, of whom a member of the board of aldermen shall be one, and a member of the common council one, who shall be sworn faithfully to perform their duty, and who shall hold their office until others are chosen and sworn in their places. And whenever any citizen or citizens shall apply in writing to the city council to lay out, widen, or otherwise alter any public street, square, or highway, and the same shall be of common convenience and necessity, the said city council may commit the same to the board of street engineers, who, or the major part of whom, shall have authority to lay out, widen, or otherwise alter the same, and estimate the damage any

individual or individuals may sustain thereby, and shall apportion the damages so estimated upon such lots or parcels of land adjacent to and bounded on such street, square, or highway as may be benefitted or made more valuable by such laying out, widening, or altering, according to the provisions of ' an act in addition to an act to incorporate the city of Bangor,' subject to the revision and determination of the city council in all cases."

The presiding judge at *nisi prius* ruled *pro forma* that the writ of *certiorari* must be denied, as matter of law. The petitioner excepted, and it was agreed that this court should determine whether or not upon the records and facts the writ ought to issue.

*John Varney*, for petitioner.

The " rules and restrictions " referred to in the city charter, § 6, are those found in R. S., c. 18. *Preble* v. *Portland*, 45 Maine, 241.

1. The petitions should have been followed. It was formerly held that no petition was necessary to authorize municipal officers to lay out a way. *Howard* v. *Hutchinson*, 10 Maine, 335. Thereupon the legislature amended the law and expressly required proceedings to be initiated by petition. R. S., c. 18, § 18. So, our city ordinances require an application in writing. Certainly, then, the council should conform somewhat to its prayer. It has been repeatedly held that upon a petition for altering and widening a new location is unauthorized. In the present case the city council entirely disregarded the prayer of the petitions.

2. The ultimate action of the council was unauthorized because it had already, to wit, Nov. 3, 1870, acted finally upon the subject-matter and accepted the engineers' report then made. R. S., c. 18, § 20. By the vote of acceptance the land was then taken so as to subject the city to damages. *Loring* v. *Boston*, 12 Gray, 209; *Harrington* v. *Co. Commrs.*, 22 Pick. 263; *Hallock* v. *Franklin*, 2 Met. 558; *Shaw* v. *Boston*, 5 Allen, 538; *Getchell* v. *Wells*, 45 Maine, 443. The rights of third parties had thus intervened to prevent reconsideration. The way was established.

3. Under the ordinance the city council should have adjudicated the widening to be of common convenience and necessity before committing it to the street engineers.

4.. The notice should have been published in two newspapers. See Act of 1835, § 1.

5. The new council had no right to commence *de novo* and make a new assessment.

6. It is doing violence to language to call the final action of the council a widening of Pickering square!

*H. C. Goodenow,* city solicitor, for respondent.

The proceedings for establishing the way and those for estimating damages are distinct and severable. The former were closed Feb. 4, 1871; the latter had to be subsequently completed, owing to defect of notice given. *Minot* v. *Cumb. Co. Commrs.*, 28 Maine, 121; *Com.* v. *Bluehill*, 5 Mass. 420; *Com.* v. *Derby*, 13 Mass. 433; *Com* v. *West Boston*, 13 Pick. 195; *Nichols* v *Bridgeport*, 23 Conn. 189.

DICKERSON, J. The petition calls in question the validity of the doings of the city council of Bangor, of Feb. 2d and 4th, 1871, in widening Pickering square and Independent street. The presiding justice, on a hearing of the case, denied the writ, as matter of law, and the plaintiff excepted. Several errors are assigned.

1. The petition alleges that "the laying out and widening" were not in accordance with any petition therefor. The proceedings of the city council were had upon two petitions, one praying for "an enlargement of area to accommodate market teams . . . by widening Union and Fore streets and Pickering square," and the other that "Pickering square be enlarged in the direction of Union street." The city council widened Pickering square and Independent street.

While the statute requires the county commissioners, in the location of highways, "to conform substantially to the description [in the petition] without adhering strictly to its limits," it con-

tains no such limitation of the powers of municipal officers in locating town and private ways. R. S., c. 18, §§ 1, 18.

By examining the petitions and the plan of the street engineers, it is obvious that the chief object of the petitioners was the enlargement of Pickering square in the direction of Union street. The petitioners having called the attention of the city council to the necessity for better accommodations for the public travel in that locality, it belonged to the latter to devise the best mode of securing this object. The petitioners might suggest a plan for doing this, but that would by no means be conclusive upon the city council; the petitioners cannot supersede the discretion of the city council by interposing their own. The petition gives the city council jurisdiction over the whole subject-matter, and it is their province to determine what changes, if any, are needed, and the manner of making them. The city council widened Pickering square by including therein all the land lying between Hodsdon, Short, and Independent streets and Pickering square as then existing. While this change did not, in terms, widen Union and Fore streets, as prayed for in one of the petitions, it had that effect practically, by throwing the whole space between Fore and Hodsdon streets open to the public accommodation. So, also, the widening of Independent street largely increased the space available for public use on a considerable portion of Union street. When the main object of the petitioners, the widening of Pickering square, was accomplished by these changes, it would establish a dangerous precedent to hold that the doings of the city council are invalid because Union and Fore streets were not widened, which was prayed for, or because Independent street was widened, which was not prayed for. In such cases much must be left to the discretion of the municipal authority, and in the case at bar there is nothing to show that there was an abuse of such discretion.

2. It is contended that the doings of the city council of Feb. 2d and 4th, 1871, cannot be sustained because the proceedings under the petitions were finally closed on Nov. 3, 1870. The

Cassidy v. City of Bangor.

record shows that on that day the city council accepted the report of the street engineers, laying out and widening Pickering square and Fore and Independent streets; and it also shows that that meeting was adjourned to Nov. 17, 1870, when the vote accepting that report was reconsidered, and new instructions were issued to the street engineers touching the same subject. It was upon the report of the street engineers, made in accordance with these instructions, that the proceedings of Feb. 2d and 4th, 1871, were had.

The adjournment was carried for the declared purpose of the further consideration of the subject under consideration, to wit, the report of the street engineers. The adjournment, under these circumstances, carried with it the whole subject under consideration when it took place, and gave to the meeting of Nov. 18, 1870, the same power to do what it might have done on Nov. 3, 1870; the latter meeting was simply a continuation of the former one. When the declared purpose of the adjournment is considered, in connection with the subsequent doings, the adjournment itself may be regarded as interpreting the action of the city council in accepting the engineers' report on Nov. 3, 1870, and showing that the city council, by such acceptance, intended to bring the subject before them, and not to adopt and establish the laying out and widening as set forth in the report. It was competent, moreover, for the city council, at their meeting on Nov. 3, 1870, as a necessary incident of their authority over the subject, to reconsider any vote passed at that meeting, and as the meeting of Nov. 18, 1870, was a continuation of the meeting of Nov. 3d, it was also competent for them, on that day, to reconsider the vote they passed touching this matter at the previous session of Nov. 3d.

Besides, the report of the street engineers made Nov. 3, 1870, is lost, was never recorded as required by the city ordinance, and there is no plan or survey by which to determine with certainty what was embraced therein, as is also required by an ordinance of the city. The only record evidence of any alteration in the lines of the streets under the petitions is the following: "Report of

street engineers of their laying out and widening Pickering square
and Fore and Independent streets accepted." At what particular
points the alterations in the lines of those streets and that square
began and ended, and in what directions they extended, cannot
now be determined by any monuments, courses, or distances. It
is obvious that the record is insufficient to establish any valid lay-
ing out or widening of any streets or square by the proceedings of
the city council of Nov. 3, 1870.

3. The next objection is that the records do not show that the
city council adjudged the widening to be of " common convenience
and necessity " before they proceeded to make the alteration.
The city ordinance referred to, § 1, provides that " whenever any
citizen or citizens shall apply in writing to the city council to lay
out, widen, or otherwise alter any public street, square, or high-
way, and the same shall be of common convenience and necessity,
the said city council may commit the same to the board of street
engineers," who are required to make a report of their doings
therein, " subject to the revision and determination of the city
council." This ordinance does not, in terms, require that the city
council shall first adjudicate upon the question of " common con-
venience and necessity " before they commit the subject to the
street engineers, and that such adjudication shall be recorded. It
is, therefore, open to construction upon this point. Unlike county
commissioners, the city council, ordinarily, do not make a careful
personal examination of the locality, but intrust that duty to the
street engineers; and, if they do, they may not be prepared to
adjudicate finally upon the question of " common convenience and
necessity " until they have received the report of the engineers.
Indeed, they cannot, ordinarily, form an intelligent judgment until
they have seen that report. It is, then, only that the city council
are in the situation required of the county commissioners when
they are authorized to adjudicate upon this question. R. S., c. 18,
§ 4. Their preliminary decision upon this point must necessarily
be made upon an imperfect knowledge of the facts, and need not
appear formally of record. The commitment of the subject to

the street engineers is sufficient evidence of such preliminary adjudication when, as in this case, the record shows that the city council, upon receipt and acceptance of the report of the engineers, adjudged " the widening so laid out by them of common convenience and necessity."

4. It is further contended that the engineers did not give the requisite notice prior to making their survey and report of Feb. 2, 1871. While the counsel for the defendants admits that the notice given was insufficient, he argues that this does not vitiate the doings of the city council in adopting and establishing the laying out and widening reported by the engineers, as such notice relates only to the subject of damages.

This raises the question whether the laying out, etc., and the estimation and apportionment of the damages are an entirety or distinct and independent acts ; whether the former may be upheld and the latter declared void, or whether both must stand or fall together. It is obvious that the two acts are not necessarily interdependent, there being nothing in their nature requiring them to be done at the same time or by the same tribunal. If they are an entirety they must be made so by statute. The notice required by the Act of 1835, § 1, amendatory of the city charter, relates exclusively to the subject of damages. While the city council may make the required location without giving that notice, it has no authority to make the assessments without giving it. The act of laying out, etc., and the estimation and apportionment of damages are distinct and independent acts, so far as the notice is concerned ; the former may be sustained and the latter held void.

This seems to have been the view of the city council, at the time, as they directed the proper notice to be given on the day they adopted and established " the laying out and widening " complained of, in accordance with which order a new estimate and apportionment of damages were made in substantial compliance with the requirements of law.

We see no objection to these proceedings. The first assessment being void, it was not necessary for the city council to reconsider

their vote in relation to it.   Though  the  second  assessment  may have been made by different persons from those who made the location, it was made by members of the city council, who had the same authority to act upon that question that their predecessors would have had if they had finished the business during their term of office.   For this purpose the city council must be regarded as a continuing board.

The fifth objection to the validity of the doings of the city council has been considered in connection with the first.

*Exceptions overruled.*

*Writ denied.*

APPLETON,  C. J.;  CUTTING,  KENT,  WALTON,  and  DANFORTH, JJ., concurred.